IN THE

# United States District Court for Maine

| | | |
|---|---|---|
| ANDREW U. D. STRAW, | ) | Case#: |
| *Plaintiff,* | ) | |
| | ) | Hon. |
| v. | ) | Judge Presiding |
| | ) | Hon. |
| UNITED STATES | ) | Magistrate Judge |
| *Defendant.* | ) | BENCH TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES UNDER SECTION 504 OF THE REHABILITATION ACT, 29 U.S.C. § 794a

**INTRODUCTION**

1. This is a civil action brought under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794a, against the United States Department of Justice ("DOJ") for its deliberate indifference to Plaintiff's disability-related rights during the course of Plaintiff's federal civil law proceedings in the matter of *Straw v. United States*, Civil Action No. 7:23-cv-162-BO-BM (E.D.N.C.).

2. Plaintiff seeks compensatory damages for the DOJ's failure to provide necessary accommodations and for its persistent refusal to prevent or remedy disability discrimination, in violation of Section 504.

3. Plaintiff wishes to state the following: "It may be difficult to process CLJA claims individually, but that is not the fault of the victims. It is the fault of the government that so many people were poisoned and injured. The government could avoid further discriminatory delay by giving everyone what they asked."

1

**JURISDICTION AND VENUE**

3.  This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1346 because this action arises under federal law and is brought against the United States.

4.  Jurisdiction to award damages under Section 504 is conferred by 29 U.S.C. § 794a(a)(2).

5.  Venue lies in the District of Maine because the Defendant DOJ has offices in this district and because the discriminatory conduct and resulting harm occurred, at least in part, in this district.

**PARTIES**

6.  Plaintiff ANDREW U. D. STRAW is an adult individual and a qualified person with a disability as defined by the Rehabilitation Act. Plaintiff resides in the Philippines but has transacted business in Maine. He has clearly stated that when CLJA justice is paid, he intends to create a disability rights law firm in the First Circuit and Maine itself. Failure to pay oppresses that plan and causes injury in the First Circuit and Maine itself, with the services of this prospective firm to enforce disability rights laws extinguished by the failure to pay.

7.  Defendant United States Department of Justice is the federal agency responsible for enforcing federal criminal laws and civil rights laws, including accommodation obligations under **Section 504 of the Rehabilitation Act**.

2

## FACTUAL ALLEGATIONS

8.  Plaintiff is disabled and requires reasonable accommodations for equal access to the judicial and administrative processes. His mental and physical disabilities have been adjudicated in federal courts in several circuits. He receives SSDI because his mental and physical disabilities are so severe, representing an administrative adjudication of his disability status. *Straw v. State of Maine Vocational Rehabilitation*, 1:25-cv-350-JAW-KFW (D.Me.) (Dkt. 1-3).

9.  During the course of the related CLJA litigation, *Straw v. United States*, DOJ staff had actual knowledge of Plaintiff's disability and accommodation needs. *See*, Dkt. 55 in that case, *inter alia*.

10. Like with the Maine VR case's 7 months of failure to communicate and the 8 years of failure to communicate by the Indiana Supreme Court (explained in Dkt. 6 of the Maine VR case), long and unjustified delays in providing programs, services, and **money** have happened in the Camp LeJeune matter.

11. Despite repeated notices and opportunities, the DOJ knowingly failed to provide necessary and reasonable accommodations, and failed to prevent ongoing discrimination against Plaintiff, amounting to ==deliberate indifference== to Plaintiff's federally protected rights under Section 504. Deliberate indifference, if found, represents intentional disability discrimination.

3

12. Plaintiff sustained harm including loss of meaningful access to legal processes caused by the DOJ's deliberate indifference.

## LEGAL BACKGROUND AND FIRST CIRCUIT AUTHORITY

12. Section 504 prohibits **discrimination** "solely by reason of" disability by any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a).

13. The First Circuit recognizes ***deliberate indifference*** to known disability-related needs as the proper standard for liability under Section 504 damages claims, requiring: actual knowledge of the risk of discrimination and actions or omissions that are plainly excessive in light of that risk (see, e.g., *García-Catalán v. United States*, 734 F.3d 100 (1st Cir. 2013); *Jeffers v. Wal-Mart Stores, Inc.*, 958 F.3d 123 (1st Cir. 2020)).

14. The First Circuit also **permits compensatory damages** for such deliberate indifference where it results in discriminatory injury.

## CAUSE OF ACTION

### Count I – Violation of Section 504 of the Rehabilitation Act (29 U.S.C. § 794)

15. Plaintiff realleges and incorporates paragraphs 1-14.

16. Defendant DOJ is a federal agency and receives federal funding and, as such, is subject to Section 504.

17. Section 504 **prohibits discrimination** in U.S. executive agency programs and services, including by DOJ attorneys.

18. The defense against Camp LeJeune victims was paid with money provided by Congress. The CLJA money to be paid to the victims comes from Congress via the Judgment Fund.

19. Access to that compensation money and the legal and claims processes to access it are services that **must be provided without discrimination** because of Section 504.

20. Section 504 plaintiffs **do not** need to prove "bad faith" or "gross misjudgment"—only that officials **knowingly disregarded a substantial risk of violating the law.** *A. J. T. by & through A. T. v. Osseo Area Sch., Indep. Sch. Dist. No. 279*, 24-249, 2025 WL 1657415, at *6 (U.S. June 12, 2025)

21. CLJA is a program created to compensate Camp LeJeune victims who were denied FTCA relief through the victory of DOJ in MDL-2218 after many years of litigation and delay. CLJA creates a compensation scheme for the victims of Camp LeJeune poisoning, most of whom were disabled by the toxins and **plaintiff here certainly claims he was**. Plaintiff incorporates by reference: *Straw v. U.S.*, Dkts. 1, 25, & 55.

22. Defendant had actual knowledge of Plaintiff's disability and need for accommodation.

23. Plaintiff incorporates by reference the two ANSWERS filed by the DOJ in plaintiff's Camp LeJeune litigation docket: **Dkts.** 17 & 27.

24. Defendant exhibited deliberate indifference by failing to provide or ensure the provision of reasonable accommodations and by failing to prevent discrimination. As Gemini AI explained, the clinical and sterile and hostile answers may be normal for a legal filing, but demonstrate a total failure to apologize or show any empathy for the victim. These answers also demonstrate a failure to understand and acknowledge that the CLJA was passed specifically to override the DOJ's FTCA victory. Congress has virtually demanded DOJ to have remorse with this new law specifically to override DOJ, but no such sentiment is revealed, only admitting the bare minimum and resisting accountability even for a person exposed *in utero* and as an infant for 19 months with brain injuries the result. AI notes how the lack of empathy for what happened to this plaintiff may be part of a wider attitude of indifference toward all claimants, resulting in the Elective Offer being so low as to represent a **discriminatory barrier** to accessing this compensation program.

25. These discriminations include the **lack of remorse** exhibited in DOJ filings in my E.D.N.C. lawsuit as well as the **extremely limited nature** of the Elective Option settlement, which hardly any victim has used. Not even ½ of 1% of the 401,000 claims under CLJA that sit before Navy JAG. It is notable that there were no settlements at all in the first year, and the EO was only created in response to many judge questions about why settlements have not started. Judge Dever said to try all of these cases would take 1,900 years, so settlements need to be the way they are concluded. That comment has been largely ignored.

6

26. https://www.navy.mil/Portals/1/clja/Public_Guidance_Elective_Option_CLJA.
    pdf?ver=7_2gY5dyX6na9QZ2gn-vkw%3D%3D

27. https://www.navy.mil/Camp-Lejeune-Justice-Act-Claims/More-about-the-
    Elective-Option/ (explaining how EO avoids "burdens" and not having access
    thus should be seen as imposing those "burdens")

28. The settlement masters were appointed over a year ago and both of them were
    former government attorneys. One was a JAG officer who advised the Camp
    LeJeune base commander and the other was a DOJ officer at a very high level.
    *Straw v. U.S.*, **Dkt.** 85-1. No settlement framework has been created in the last
    year and none is expected through the end of the year. Camp LeJeune Water
    Contamination Litigation, 7:23-cv-897 (E.D.N.C.), **Dkts.** 406, 340.

29. It is my contention that DOJ's agreeing to past government lawyers being the
    settlement masters and their appointment in 2024 and again in 2025 (**Dkt.**
    418) without any settlement on offer yet is more evidence of disability
    discrimination via delay. Delay Judge Dever warned about over 2 years ago.
    Delay as deliberate discrimination via "deliberate indifference."

30. Instead of FAIRLY expediting claims and offering FAIR settlement amounts
    commensurate with the level of damage one may obtain as evidenced by
    verdicts elsewhere across the United States, the Elective Option created
    **arbitrary barriers to be found nowhere in the Camp LeJeune Justice Act** and
    discriminates on its face for that reason. For instance, CLJA only requires 30

days of exposure. The Elective Option ignores that open door and only gives more if a person was exposed longer, with hardly anyone having served at Camp LeJeune for 5 years, one of the categories. According to Wikipedia, none of the commanders of the 2nd Division was at Camp LeJeune that long. https://en.wikipedia.org/wiki/List_of_2nd_Marine_Division_commanders

31. It is a training base that was established during WWII and people come and go. Plaintiff's father trained there at MCAS New River for 19 months before he served as U.S. Marine in Vietnam, 1970-1971.

32. Plaintiff incorporates by reference **the Gemini Google URLs providing AI analysis** of why the DOJ's actions represented discrimination in violation of Section 504. Gemini AI evaluated as follows:

33. https://gemini.google.com/share/c7cb1d379bcb

34. https://gemini.google.com/share/780c45fe5866

35. DOJ has been aware of the problem since EPA made the entire base a Superfund site in 1989. The U.S. Marine Corps Commandant expressed his concern about the poisoning and health issues in 2004. This should have been resolved and all of the victims "taken care of," as the Commandant said, *decades ago* but DOJ has stubbornly resisted compensation under any theory it could dream up. There is a DOJ attitude evident here that seems dangerously close to a **disdain for those who served and were poisoned**, their

8

patriotism mocked by the delays, which represent deliberate indifference and thus intentional disability discrimination, if not ***worse***.

36. The delays are not just in this litigation in North Carolina. The government had an ***affirmative duty*** to compensate the people it injured and made disabled and provide them health care. These failures are deliberate discrimination.

> Press Release: Commandant Appoints Independent Panel to Review
> Camp Lejeune Water Contamination Events
> (Release # 0220-04-2241)
> February 20, 2004
> United States Marine Corps
> Division of Public Affairs
>
> HEADQUARTERS MARINE CORPS - The Commandant of the Marine
> Corps, General Mike Hagee, has convened an independent panel to
> review the events at Camp Lejeune between 1980 and 1985, which
> pertain to the decision to close several wells which supplied drinking
> water to portions of the base. We are deeply concerned about the health
> issues raised by members of our Marine Corps family and are working
> diligently to ensure that anyone affected during this period and beyond
> is well cared for, said Gen. Hagee. Marines take care of each other on
> the battlefield and in garrison and this case is no different. A Marine is
> a Marine for life.
>
> https://clnr.hqi.usmc.mil/clwater/pages/articles/pr_2-20-04.aspx

37. As a direct and proximate result of Defendant's deliberate indifference, a form of intentional disability discrimination, Plaintiff suffered damages including denial of full and equal access to legal processes and all compensation that could have been provided to him in the past 3 years since the law was passed on August 10, 2022, and plaintiff made his claim for himself in 2022.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court, 3 years after CLJA was passed as part of the PACT Act, the following relief:

A. Declare Defendant's failure to accommodate and deliberately indifferent conduct violated Section 504 of the Rehabilitation Act;

B. Award Plaintiff compensatory damages pursuant to 29 U.S.C. § 794a by forcing DOJ to simply accept the amount of damages in plaintiff's administrative claim forms and his amended complaint in the CLJA individual lawsuit he filed. The Elective Option should be deemed to accept his demand at face value as the compensatory damages that are due and his cardiac birth defect and 6 mental or neurological conditions diagnosed by doctors as conditions covered by the EO. Since the government failed to make a fair EO system that would cover the damage done, the Court should deem serious conditions like mental illness that causes high suicide rates and stigma as being covered. If the government is dead set on distinguishing away most of the conditions and delaying for 1,900 years by imposing a litigation requirement on the victims, that's discrimination and the Court should punish it by directing all conditions to be accepted, not just a tiny few, and the amount of damages should be exactly what the disabled people asked, given deliberate indifference has occurred. That is a logical and equitable result that would be justice because the damage amounts were provided by the injured and their counsel.

C. Award attorney's fees, costs, and expenses pursuant to 29 U.S.C. § 794a(b);

D. Grant such other and further relief as the Court deems just and proper to address the discrimination and prevent any further discrimination.

## DEMAND FOR JURY TRIAL

Plaintiff demands a bench trial on all issues so triable.

### *IN FORMA PAUPERIS* & SERVICE OF SUMMONS & COMPLAINT

Plaintiff seeks *IFP* status to pursue his claim. This U.S. District Court has granted Plaintiff *IFP* status in the last month. *Straw v. University of Maine*, 1:25-cv-00325-JAW-KFW (D.Me. 2025); *Straw v. State of Maine Vocational Rehabilitation*, 1:25-cv-350-JAW-KFW (D.Me.). *IFP* was granted at Dkt. 82 in plaintiff's CLJA case.

Service of the summons and complaint is by the Court under FRCP 4(c) and 28 U.S.C. § 1915(d) should *IFP* be granted. I ask the Court to serve the Defendant United States. I intend to ask the government to waive service with notice of this lawsuit after a case number has been assigned.

I, Andrew U. D. Straw, verify that the above factual contentions and statements are true and correct to the best of my knowledge, information, and belief, on penalty of perjury.  Signed: <mark>July 19, 2025</mark>.

Respectfully,

s/ ANDREW U. D. STRAW
9169 W. State ST, STE 690
Garden City, ID 83714-1733
Mobile Phone: (847) 807-5237
andrew@andrewstraw.com

11

## CERTIFICATE OF SERVICE

I, Andrew U. D. Straw, certify that on <mark>July 19, 2025</mark>, I sent this **COMPLAINT** via email to the Clerk of this Court. Included herewith are a **COVERSHEET** and **APPLICATION FOR** *IFP* **STATUS** and **ENOTICE**, via U.S. Mail to the Clerk of Court. Counsel for Defendant is the Attorney General of the United States, Hon. Pamela Bondi.

Respectfully submitted,

s/ ANDREW U. D. STRAW
*Pro Se Plaintiff*
9169 W. State ST, STE 690
Garden City, ID 83714-1733
Mobile Phone: (847) 807-5237
andrew@andrewstraw.com

12