IN THE

# United States District Court for Maine

| | | |
|---|---|---|
| ANDREW U. D. STRAW, | ) | Case#: 2:25-cv-00379-JAW-KFW |
| *Plaintiff,* | ) | |
| | ) | Hon. John A. Woodcock, Jr. |
| v. | ) | Judge Presiding |
| | ) | Hon. Karen Frink Wolf |
| UNITED STATES | ) | Magistrate Judge |
| *Defendant.* | ) | BENCH TRIAL DEMANDED |

## AFFIDAVIT MEMORANDUM ON DELIBERATE INDIFFERENCE AND ITS CURE

I, Plaintiff Andrew U. D. Straw, wish to make some observations on why the Elective Option needs to be addressed as deliberate indifference along with the entire manner the DOJ has approached Camp LeJeune Justice Act litigation:

1. Today, **July 26, 2025**, is the 35th Anniversary of the signing of the Americans with Disabilities Act (ADA) and I celebrate it by explaining the **deliberate indifference of DOJ** in the upcoming "global settlement" under CLJA litigation that is supposed to happen by December 2025. The Rehabilitation Act of 1973, Section 504, and the ADA both prohibit deliberate indifference. It's a good day to explain further the **deliberate indifference** that is in the pipeline for "global settlement."

2. There is much hand-wringing about general and specific causation in the Camp LeJeune Justice Act litigation. The government does not want to pay anyone who doesn't show that their injury was caused by the water. However, CLJA

lowers the normal causation to **"at least as likely as not."** This should mean that **any increased likelihood of a "harm" meets this standard**.

3. Instead of dealing with the lack of scientific studies, certain calculations can be made today to show causation without spending millions of dollars and having to wait decades to get answers.

4. Statistics is a powerful tool in this regard.

5. Every victim in the CLJA litigation has asserted certain illnesses or disabilities or their effects, **"harms"** in the statute's language.

6. The government knows that about 1 million military veterans and civilian workers and family members of the veterans were exposed. Everyone seems to agree on that number. Those people were exposed over 34 years, 1953-1987.

7. It doesn't take a genius to say that causation can be shown by taking the **number of claims for each condition and divide it by the 1 million total**. That percentage would then be placed alongside national incidence of that illness or disability to see if Camp LeJeune exposure increased the likelihood compared to the general population.

8. In one fell swoop and at very low cost, all of the conditions can be evaluated that way. If the incidence among that 1 million was higher as a statistical matter, **causation both general and specific must be agreed**.

9. Some of those affected won't even have made a claim for one reason or another (like a wrongful death with no heir to make a claim), so this percentage of

incidence is the **lowest floor**. It is **lower than the actual percentage** for **every single condition**.

10. For some reason, the settlement masters, both former government attorneys (DOJ and JAG), want only to send 2,500 surveys to the 401,000 claimants regarding their illnesses.

11. This is not fair. Those with illnesses that are already rare, like schizophrenia or bipolar or autism that I have, may be **underrepresented**.

12. This is not a political poll. Every single claim and its claimed harms needs to be gathered together in one Excel sheet so every single condition can have the percentage incidence like I just mentioned. And that way, those whose conditions are **more likely to any degree** can dispense with needing to prove causation.

13. Medicine does not deal in absolutes, just like most areas of science. It deals in percentages and likelihoods. Setting the bar at "at least as likely as not" implies that **any increase at all in likelihood of a certain injury** means that person getting that illness after 30 days of exposure per the statute should be paid.

14. Exposure yields the specific causation. To say otherwise is to be deliberately indifferent to the injury when the incidence is higher in Camp LeJeune victims exposed there for the statutory time.

15. It is not possible to backtrack every single chemical reaction that happened in a body from 38 (1987) to 73 (1953) years ago, not to mention every different type of predilection, every **“eggshell skull” condition** that the poisons made more likely to injure. *Figueroa-Torres v. Toledo-Davila*, 232 F.3d 270 (1st Cir. 2000) (eggshell skull discussed)

16. The Supreme Court held that an offender, **"takes his victim as he finds him."** *United States v. Feola*, 420 U.S. 671, 685 (1975).

17. But notice in the Affirmative Defenses (pages 27-30) in the DOJ’s ANSWER at **Dkt. 17** in my lawsuit how easy it is to see the deliberate indifference:

18. https://www.courtlistener.com/docket/66839685/17/straw-v-united-states/

19. Despite my being exposed ***in utero* and as an infant** and the DOJ knows this fact, DOJ had the nerve to say:

20. ELEVENTH AFFIRMATIVE DEFENSE

    To the extent that the evidence shows that **Plaintiff voluntarily assumed the risks** of the occasion, any recovery is barred by **Plaintiff’s assumption of risk**.

21. TWELFTH AFFIRMATIVE DEFENSE To the extent that the evidence shows that **Plaintiff’s negligence** contributed to the cause of any injury, loss, or damage, any recovery is barred, in whole or in part, by **Plaintiff’s contributory or comparative negligence**.

22. THIRTEENTH AFFIRMATIVE DEFENSE To the extent that the evidence shows that **Plaintiff failed to exercise reasonable care and diligence** to avoid or lessen the consequences of any injury, loss, or damage, any recovery incident to such failure is barred by Plaintiff's failure to mitigate damages.

23. SIXTEENTH AFFIRMATIVE DEFENSE To the extent the evidence shows that **Plaintiff's claims arise out of the combatant activities** of the Armed Forces, any recovery is barred by the combatant activities exception of the Camp Lejeune Justice Act.

24. Nobody was doing combatant activities at Camp LeJeune. My pregnant mother wasn't. Even my father was just training there. This kind of ridiculous defense shows discrimination inherently, trying to get relief through nonsense. And if it's not used for relief, why is it there?

25. This idea that I as a fetus or infant **aged 0-1** had any volition at all about my presence there is pure nonsense that can only be attributed to **malice**, even greater and worse than indifference, and thus disability discrimination too. DOJ is suggesting, with such haughtiness, that I may have caused my own injury at that age. **How does DOJ dare to say that? Because Courts have not held them accountable.** It was disability discrimination that motivated these defenses and the whole of the DOJ's behavior with the litigation and the EO and in delaying and denying full justice. It must be remedied now.

26. The First Circuit, in *Doty v. Sewall*, cited *Feola* as support for the proposition that "[i]n personal injury law, it is well settled that in an action for damages, the tortfeasor 'takes his victim as he finds him.'" 908 F.2d 1053, 1059 (1st Cir. 1990).

27. The Second Circuit, in *Maurer v. United States*, held that:

> "[i]t is a settled principle of tort law that when a defendant's wrongful act causes injury, he is fully liable for the resulting damage even though the injured plaintiff had a pre-existing condition that made the consequences of the wrongful act more severe than they would have been for a normal victim." 668 F.2d 98, 99 (2d Cir. 1981).

28. The Fifth Circuit, in *Dunn v. Denk*, held that:

> the "directly and only" language [taken from applicable case law] was intended to distinguish between injuries resulting from excessive force and those resulting from the justified use of force. It was not intended to displace the venerable rule that a tortfeasor takes his victim as he finds him or to immunize the exacerbation of a pre-existing condition, leaving the weakest and most vulnerable members of society with the least protection from police misconduct. 54 F.3d 248, 250-51 (5th Cir. 1995)

29. The Sixth Circuit, in *Shannon v. Lester*, held that a plaintiff could recover damages under § 1983 for any aggravation of his pre-existing injuries caused by the police's unreasonable delay in taking him to the hospital. 519 F.2d 76, 79 (6th Cir. 1975).

30. The Seventh Circuit, in *Rardin v. T & D Mach. Handling, Inc.*, held that "the injurer takes his victim as he finds him and is therefore liable for the full extent of the injury even if unforeseeable . . . even if . . . [the victim], because of a pre-

existing injury sustains a **much greater loss than the average victim would have** . . . ." 890 F.2d 24, 28 (7th Cir. 1989) (citations omitted).

31. The Ninth Circuit, in *Lutz v. United States*, held that defendant was liable for psychological damage inflicted on a victim who had been attacked by defendant's dog, even though that damage was caused in part by a **pre-existing condition**. The court held that the situation was "an example of the general rule that **the defendant must take the plaintiff as he finds her and accept liability for all consequences flowing from the injury**." 685 F.2d 1178, 1186 (9th Cir. 1982) (citation omitted).

32. Eggshell Skull applied (pre-existing condition) in NC: *Kluttz-Ellison v. Noah's Playloft Preschool* (N.C. Ct. App. May 2022). https://law.justia.com/cases/north-carolina/court-of-appeals/2022/21-356.html

33. ***All consequences***. All "harms" in the language of the CLJA:

34. https://www.congress.gov/117/bills/s3373/BILLS-117s3373enr.xml#toc-H1974679CDA864491B1CB10D5F1E0BF71

35. CLJA is not just a tort law. It creates a statutory remedy that removes all the government's defenses (Sec. 804(f)) that were erected under FTCA and MDL-2218. This is **a strict liability statute** with no requirement of negligence to be proven.

36. Congress has essentially said: we the federal government did this. We paid for the land and the drinking water supply and many of the toxins. We dug the

wells. We, these United States, didn't keep that system safe and even the Navy did not enforce its own regulations that drinking water must be free of contaminants. We made that military. We are responsible. The buck stops with Congress that paid for this mess. No negligence defenses are available under CLJA. It's just **not in the statute** because Congress wanted it that way.

37. And making it strict liability in that fashion should be an enormous red flag to DOJ to **settle with every single claimant** and **do it now**. Not doing so and attempting to lowball when **Congress does not demand lowballing** is discrimination.

38. Congress made the Judgment Fund. Congress passed the Rehabilitation Act and the ADA.

39. Congress wants this taken care of right now, not with decades of litigation that serves no purpose but to hurt these victims more, cause delay, and deliberately discriminate by not caring about them.

40. The Rehab Act creates a mandatory care obligation for the benefit of these disabled victims and DOJ is not living up to that affirmative duty to CARE, like it's their own mother or father or child or themselves who were poisoned. CARE THAT MUCH: that's the Rehab Act duty.

41. There is NO EVIDENCE that Congress wants DOJ to discriminate. Congress passed a law against that in 1973 that President Nixon signed. **Rehab Act**

**Section 504 must be applied strictly and aggressively** for me so the other 401,000 claimants are protected. We are in the same boat, similarly situated.

42. The United States has tried to turn the eggshell skull doctrine upside down in its pleadings but **that's disability discrimination**. To even suggest to the person with a pre-existing condition that it ***was their own fault*** as a fetus or infant and that condition made worse by Camp LeJeune toxins should not be paid is **absolute nonsense that goes against well settled tort law principles**. W. Page Keeton et. al., Prosser and Keeton on The Law of Torts §§ 43 at 291 (5th ed. 1984).

43. **Exposure plus higher incidence** is how one meets "at least as likely as not." It doesn't take another 50 years of medical research to come to these conclusions.

44. We have the numbers of people with claims and injuries presented. We know how many people were exposed. That set of claimants under CLJA should be the population under study. CLJA generated the data already. The question is whether DOJ will accept the result or keep discriminating.

45. Unlike most studies, the data is supported and more legitimate because the **injuries were claimed under oath**. The reliability is much higher with that fact considered. To lie is to be **a criminal**.

46. **Nothing else is needed** unless we go down the path of deliberate indifference, as DOJ has done repeatedly, engaging in victim blaming like one finds in the affirmative defenses I listed *supra*. It's called DARVO by psychologists:

https://www.medicalnewstoday.com/articles/what-is-darvo

47. DENY. ATTACK. REVERSE VICTIM AND OFFENDER.

48. That's exactly what these affirmative defenses attempt to do. Blame me for my own poisoning. It is what narcissists do to deflect blame.

49. It shows **deliberate indifference** and even worse, **malice**. The above affirmative defenses are more than enough to show a Rehabilitation Act of 1973, Section 504 violation, but there is a pattern of discrimination much wider and I have shown it in my various pleadings, including my COMPLAINT at Dkt. 1 and **Dkts. 7, 7-1, 7-2, 9, 9-1, & 9-2**.

50. DOJ doesn't care about disability rights and hides behind its being "too busy." Too busy to care when it has affirmative duties to care. But when DOJ is **not busy**, it deliberately discriminates as shown in the affirmative defenses, EO, and the manner of its CLJA defense, without apology or remorse for making victims wait decades after the COMMANDANT said every victim needed to be cared for:

51. https://clnr.hqi.usmc.mil/clwater/pages/articles/pr_2-20-04.aspx

52. Every claim should have an email associated, either from a *pro se* claimant or counsel. Nearly everyone has counsel, so those counsel can be contacted for every single claim by the emails they provided the government.

53. There is no point in trying to save money regarding determining the incidence levels in a trillion dollar lawsuit like this.

54. It's not hard to gather this information from the SF-95 claim forms or the Short Form Complaints, which are even more specific about which conditions and harms are claimed. You can see mine in Dkt. 55 of my CLJA lawsuit.

55. Some are now saying that the goal of the "global settlement" is to achieve **50,000 settlement offers** out of **401,000 claims**. https://www.wunc.org/military/2024-08-07/camp-lejeune-toxic-water

56. ***That's not global***.

57. If that is what is offered, again, just like the EO and its narrow scope and lowball offers, that's **deliberate indifference** to **87.5% of the claimants**, and it just strengthens my claim here.

58. Not even 1/10th of 1% of the claimants, the victims, took the Elective Option (EO). A tiny minority of the claimants were even offered the EO.

59. To say a framework for settlement only will result in **12.5% of the claims being settled** is to stretch "global" into its opposite.

60. **"Far from global"** is more accurate. It should be called "The FAR FROM GLOBAL SETTLEMENT." Not global settlement.

61. And let's assume the judge actually meant 1,900 years for trials. If we reduce that by 12.5%, now this "global" settlement leaves **1,662.5 years of litigation** for the ***other 87.5%*** to get their justice under the CAMP LEJEUNE **JUSTICE** ACT. The ***delay*** defeats the VERY NAME of the ACT and is discrimination.

62. There is no serious effort to show remorse by DOJ or make this easier than MDL-2218, which commenced in 2011 and was dismissed 5 years later. Now we have CLJA passed in August 2022 to reverse that result, that LITIGATION, and 3 years have passed without a "GLOBAL" settlement.

63. **DOJ has not learned anything** from being overridden by Congress.

64. This is ***teasing***.

65. It is disability discrimination every bit as bad as a bully on the school bus labeling people as "crips" and "SPED" or saying any number of ableist epithets.

66. DOJ is not in business to tease these poisoned individuals, these **patriots** who worked and served and supported their veteran family members by being exposed to this poison. They did this for ***our nation, our military***, and were ***poisoned***, and didn't get justice since 1953. **1968 in my case** because that's when my father started his 19 months at Camp LeJeune, with me *in utero* and BORN in the Camp LeJeune Naval Hospital in 1969. I have not had a single penny of justice, just delays and insults like that affirmative defenses, above, that should be labeled as deliberate indifference to my plight, not to mention the death of my mother from this while I was in law school in 1997.

WHEREFORE, this Court needs to hold DOJ accountable for all actions that constitute **"deliberate indifference."** This faux global settlement offer taking shape needs not to exclude any claimants. To be labeled global without covering everyone is to **discriminate again**, to **tease**, to leave 87.5% with only decades of **litigation burdens**

as their CAMP LEJEUNE JUSTICE. To offer less than the injuries and harms are worth as shown in the **high end of jury verdicts** for these types of injuries across the United States is to discriminate, again. Why the high end? Because of the length of time, the need to get a new law passed for this injustice over DOJ's opposition, and DOJ's continued behavior trying to exclude victims and reduce what they will get. Even the way DOJ advocated to CONGRESS while CLJA was under consideration should be seen as disability discrimination. DOJ had NO RIGHT to advocate against the victims, EVER. Every DOJ mouth that opened against the victims was a new discrimination at every single point. CONGRESS said no, rejecting DOJ's discriminatory suggestions, and now we have CLJA as a result. The discrimination is **pronounced and deliberate** because DOJ has not changed its attitude. And now it has **settlement masters who used to work for the government**, for **DOJ and JAG**. And if discrimination happens yet again with the fake "Global Settlement," this Court should see the discrimination for what it is and **take over**. The EO should be reworked, as I stated. Every claimant gets paid. The amount is objective, not a lowball offer, at the high end of verdicts for the injuries, or simply the amount on the claim form with an equitable cap of $150,000,000 per claimant. Attorney fees need to be paid by the government. All future medical costs need to be paid by the Judgment Fund. This is not a neutral situation. This is the government having failed 401,000 claimants **including myself** and my dead mother and there needs to be remorse, apology, and payment without delay, representing **CAMP LEJEUNE JUSTICE**. Nothing less will do.

I, Andrew U. D. Straw, verify that the above factual contentions and statements are true and correct to the best of my knowledge, information, and belief, on penalty of perjury. Signed: **July 26, 2025**.

Respectfully,

Andrew U. D. Straw

s/ ANDREW U. D. STRAW
9169 W. State ST, STE 690
Garden City, ID 83714-1733
Mobile Phone: (847) 807-5237
andrew@andrewstraw.com

**CERTIFICATE OF SERVICE**

I, Andrew U. D. Straw, certify that on **July 26, 2025**, I sent this **AFFIDAVIT MEMORANDUM** via email to the Clerk of Court. Counsel for Defendant is the Attorney General of the United States, Hon. Pamela Bondi.

Respectfully submitted,

s/ ANDREW U. D. STRAW
*Pro Se Plaintiff*
9169 W. State ST, STE 690
Garden City, ID 83714-1733
Mobile Phone: (847) 807-5237
andrew@andrewstraw.com

www.andrewstraw.com