NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ANDREW U.D. STRAW,**
*Claimant-Appellant*

v.

**ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2020-2090

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 18-7129, Judge William S. Greenberg, Judge Joseph L. Toth, Judge Joseph L. Falvey, Jr.

---

Decided: January 15, 2021

---

ANDREW U.D. STRAW, Washington, DC, pro se.

ANDREW JAMES HUNTER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee. Also represented by JEFFREY B. CLARK, TARA K. HOGAN, ROBERT EDWARD KIRSCHMAN, JR.

---

Before TARANTO, BRYSON, and HUGHES, *Circuit Judges.*

PER CURIAM.

Appellant Andrew U.D. Straw appeals a panel decision by the United States Court of Appeals for Veterans Claims affirming a Board of Veterans' Appeals decision which denied Mr. Straw payment or reimbursement for non-VA medical care as a Camp Lejeune family member under 38 U.S.C. § 1787 and 38 C.F.R. § 17.410. We affirm the Veterans Court's decision.

I

In 2012, the Honoring America's Veterans and Caring for Camp Lejeune Families Act (Act) was enacted to provide hospital care and medical services to veterans who were stationed at Camp Lejeune, North Carolina, while water at Camp Lejeune was contaminated. *Straw v. Wilkie*, 32 Vet. App. 374, 375 (2020) (*Decision*); Pub. L. No. 112–154, 126 Stat. 1165. Among other benefits, the Act provides certain healthcare benefits to family members of veterans who resided at Camp Lejeune for at least 30 days during the period between August 1, 1953, and December 31, 1987, or who were in utero during the same period while their mother resided at Camp Lejeune. 38 U.S.C. § 1787. These healthcare benefits include payment or reimbursement for non-VA healthcare for covered illnesses under 38 C.F.R. § 17.400(b), including neurobehavioral effects. *See* 38 C.F.R. § 17.410.

The relevant facts here, as established by the Board, are that Mr. Straw's father was a veteran who served as a member of Marine Heavy Helicopter Squadron 461, based at Marine Corps Air Station New River, North Carolina. *Decision*, 32 Vet. App. at 377. The Board took judicial notice that Marine Corps Air Station New River is very close to Camp Lejeune. 2018 WL 9670888, at *1 (first citing *Yeoman v. West*, 140 F.3d 1443 (Fed. Cir. 1998); and then citing *Dedicatoria v. Brown*, 8 Vet. App. 441 (1995)). Mr.

Case 2:25-cv-00672-JLR  Case: 20-2090  Document: 33  Document 1-31  Page: 3  Filed: 04/15/2023  Filed: 03/05/21  Page 52 of 161  PageID #:

STRAW v. WILKIE                                                  3

Straw was born on March 19, 1969, at Camp Lejeune Naval Hospital where he and his mother stayed until March 22, 1969, when they were discharged. *Decision*, 32 Vet. App. at 377. Hospital records and Mr. Straw's birth certificate list his parents' residence as an off-base home address in Jacksonville, North Carolina. *Id.*

Mr. Straw argues that he suffered a neurobehavioral effect associated with Camp Lejeune, and that under 38 U.S.C. § 1787 and 38 C.F.R. § 17.410, he qualifies for healthcare benefits because he and his mother regularly visited and were present at Camp Lejeune for at least 30 days, both while he was in utero and after his birth. Mr. Straw argues that this qualifies as "resid[ing] at" Camp Lejeune under 38 U.S.C. § 1787. Appellant's Br. at 14.[1] Construed liberally, Mr. Straw's brief also argues that the Veterans Court's decision denying him medical benefits was a violation of the Fifth Amendment's Equal Protection Clause because Mr. Straw was treated differently from others who did qualify for such benefits. *Id.* at 2. Finally, Mr. Straw argues that the Veterans Court failed to adjudicate the fact that the Secretary of Veterans Affairs' brief was untimely, and this was grounds for a pro forma reversal. *Id.*

II

Upon appeal from the Veterans Court we have jurisdiction to review "all relevant questions of law, including interpreting constitutional and statutory provisions." 38 U.S.C. § 7292(d)(1). However, except to the extent that an appeal presents a constitutional issue, we lack jurisdiction to review a factual determination or an application of

---

[1] Citations to Mr. Straw's informal brief and motion to supplement reflect the pagination applied by this court's electronic case files system, Docket Nos. 4 and 28 respectively.

law to fact. *Id*. § 7292(d)(2). Where we have jurisdiction, we must set aside an interpretation that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or (D) without observance of procedure required by law." *Id*. § 7292(d)(1). We review Veterans Court legal determinations de novo. *Prenzler v. Derwinski*, 928 F.2d 392, 393 (Fed. Cir. 1991).

### III

Section 1787(a) provides that:

a family member of a veteran described in subparagraph (F) of section 1710(e)(1) of this title who resided at Camp Lejeune, North Carolina, for not fewer than 30 days during the period described in such subparagraph or who was in utero during such period while the mother of such family member resided at such location shall be eligible for hospital care and medical services furnished by the Secretary for any of the illnesses or conditions described in such subparagraph, notwithstanding that there is insufficient medical evidence to conclude that such illnesses or conditions are attributable to such residence.

The Board's findings of fact establish that Mr. Straw was born during the period provided for in the statute and Mr. Straw contends that he suffers from neurobehavioral effects which are covered by the statute. *Decision*, 32 Vet. App. at 376 n.2. However, the Veterans Court found that Mr. Straw does not qualify for § 1787 benefits because neither he nor his mother resided at Camp Lejeune for 30 days as required by the statute. *Id*. at 379. Mr. Straw argues that the Veterans Court improperly construed the phrase "resided at" and that under a proper interpretation he resided at Camp Lejeune.

STRAW v. WILKIE 5

Mr. Straw argues that he should be deemed to have resided at Camp Lejeune because he was born at Camp Lejeune Naval Hospital, and because he made numerous trips to Camp Lejeune with his mother, both in utero and after his birth. Appellant's Br. at 11. Mr. Straw argues that the phrase "resided at" should be construed liberally to ensure that the statute serves its purpose. *Id*. at 15. As evidence of the broad purpose of the Act, Mr. Straw points to the Section title: "Health care of family members of veterans stationed at Camp Lejeune, North Carolina," and to President Barack Obama's statements when signing the Act, touting its benefits to Camp Lejeune veterans and their families without mention of the residency requirement. *Id*. at 29–30. Mr. Straw advances that one interpretation of the residence requirement could include days of "base access," at least for infants born at Camp Lejeune Naval Hospital. *Id*. at 30.

In supplemental briefing, Mr. Straw also argues that the plain meaning of residence does not foreclose the possibility of having a residence separate from where one lives. Appellant's S. Br. at 2–3. Mr. Straw cites the "variety of meanings" in the Cambridge English Dictionary, including "much vaguer definitions such as 'artist in residence'" or "Governor's Residence." *Id*. Mr. Straw also argues that the phrase "primary residence" implies that one could have a non-primary residence where they do not live. *Id*.

The Veterans Court denied Mr. Straw's argument that he should be deemed to have resided at Camp Lejeune based on the time that he spent there, finding that this argument would require the Veterans Court to read language into the law. *Decision*, 32 Vet. App. at 378–79. The Veterans Court explained that Congress could have allowed such a "constructive residence" theory by allowing family members to show a regular presence at Camp Lejeune or by imposing a residency requirement that included land near Camp Lejeune, but that it chose not to. *Id*.

The Veterans Court also denied Mr. Straw's argument that residence should be broadly construed to effectuate the purpose of the Act, finding that the plain meaning of "resided at" excluded Mr. Straw and that where the meaning of statutory language is plain, a court cannot ignore this meaning in favor of a judicially determined statutory purpose. *Id.* (citing *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987) (per curiam)).

We agree with the Veterans Court that "resided at Camp Lejeune" has a plain meaning that includes only those who lived on base. Using the dictionary selected by Mr. Straw, the Cambridge English Dictionary, the first definition of reside is "to live, have your home, or stay in a place." *See Reside*, CAMBRIDGE ENGLISH DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/reside. This definition is consistent with the other dictionary definitions cited by the Veterans Court. *Decision*, 32 Vet. App. at 378 (citing *United States v. Williams*, 836 F.3d 1, 7 (D.C. Cir. 2016) ("To 'reside' is '[t]o dwell permanently or for a considerable time' or 'to have one's settled or usual home in or at a particular place.'") (alteration in original) (quoting OXFORD ENGLISH DICTIONARY (2d ed. 1989))); *see also Reside,* MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/reside ("to dwell permanently or continuously: occupy a place as one's legal domicile"). The other examples cited by Mr. Straw—"artist in residence" or "Governor's Residence"—are unavailing because these phrases are not used in the statute.

Having determined that "resided at" has a plain meaning that includes only those who lived at Camp Lejeune, we agree with the Veterans Court that the statutory language does not allow for "constructive residence" based on time spent on Camp Lejeune because this would defy the plain meaning of the statute. We also agree with the Veterans Court that we cannot construe residence to be broader than its plain meaning based on statutory purpose.

*See Rodriguez*, 480 U.S. at 525–26 ("[N]o legislation pursues its purposes at all costs").

Because Mr. Straw and his mother lived at an off-base residence and did not reside at Camp Lejeune for 30 days, we affirm the Veterans Court's decision that he does not meet the § 1787(a) requirements for entitlement to healthcare benefits.

IV

Construed liberally, Mr. Straw's informal brief also advances a Fifth Amendment equal protection claim, arguing that if he is not granted § 1787(a) benefits then he is not being treated equally to those who did live on base and qualify for such benefits. Appellant's Br. at 2.

"In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). "A rational basis is 'any reasonably conceivable state of facts' that support the classification." *Briggs v. Merit Sys. Prot. Bd.*, 331 F.3d 1307, 1318 (Fed. Cir. 2003) (quoting *Beach Commc'ns*, 508 U.S. at 313).

The statutory classification made in § 1787(a) does not proceed on suspect lines because the statute does not create a classification based on race, sex, alienage, or national origin. *See Frontiero v. Richardson*, 411 U.S. 677, 688 (1973) (plurality opinion). Thus, we turn to whether Mr. Straw has met his burden of showing an absence of a rational basis for the classification. As the Veterans Court explained, "Congress could have adopted the 30-day residency requirement for family members for any number of rational reasons, such as a proxy for the likelihood of harmful exposure to contaminants on the base, or the need for

Case 2:25-cv-06672-JLS Case: 20-1090 Document 1-13 Document: 33 Page: 08/05/25 Filed: 04/15/2023 Page: 58 of 58 PageID #: 166

8 STRAW v. WILKIE

administrative feasibility." *Decision*, 32 Vet. App. at 380 (citations omitted). Because we agree with the Veterans Court that Mr. Straw has not established a lack of a rational basis in the statutory classification, we affirm.

V

Finally, Mr. Straw argues that the Veterans Court decision was procedurally deficient because the Secretary's brief was untimely, and the Veterans Court failed to address the timeliness of the Secretary's filing in its decision. Because the Secretary's filing was timely, it was not error for the Veterans Court to omit a discussion of timeliness.

Mr. Straw submitted his informal brief to the Veterans Court on October 10, 2019, but it was not accepted because Mr. Straw was represented by counsel at the time, and "[w]hen an appellant is represented, the Court accepts papers only from the representative." S.A. at 9. The Veterans Court granted Mr. Straw's counsel's motion to withdraw on October 17, and ordered that Mr. Straw be treated as self-represented. *Id.* at 4. The Veterans Court also accepted Mr. Straw's informal brief on October 17. *Id.* Pursuant to the Veterans Court's Rules of Practice and Procedure, the Secretary had 60 days from October 17 to respond to Mr. Straw's brief. U.S. Vet. App. R. 31(a)(2). The Secretary timely filed his brief on December 16, 2019. *Id.* at 5.

VI

Because the Veterans Court properly construed the statute, and because there was no constitutional or procedural violation, we affirm the Veterans Court's decision.

**AFFIRMED**

No costs.